## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

J.W. a minor, by and through
her next friend, K.W.,

      Plaintiff,                       Case No.: 3:21-cv-1259

      v.                             INJUNCTIVE RELIEF SOUGHT

SCHOOL BOARD OF SUWANNEE
COUNTY, FLORIDA,

      Defendant.

_____/

## **COMPLAINT**

### **PRELIMINARY STATEMENT**

1.    This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (Section 1983) to enforce the final order of the Administrative Law Judge ("ALJ") in an administrative due process hearing held under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(f)(1), and to review the portion of the final order in Division of Administrative Hearings ("DOAH") Case No. 21-0522EDM (Ex. 1) that failed to provide compensatory education for J.W. against the School Board pursuant to the IDEA, 20 U.S.C. § 1415(i)(2).

2.    On September 24, 2021, the ALJ found that the Defendant School Board of Suwannee County ("School Board") breached its Child Find duty as to Plaintiff J.W. ("J.W.") and ordered it to evaluate J.W. "as soon as practicable." (Ex. 1, at 11-12.) The School Board has not yet conducted this evaluation.

3.     J.W. is a fifteen year-old 8th grader with suspected disabilities. Plaintiff's diagnoses of ADHD, generalized anxiety disorder, and major depressive disorder have been known to the School Board since at least August 11, 2020. However, the School Board failed to identify or evaluate Plaintiff to determine if she was a student with a disability and in need of special education and related services under the IDEA.

4.     J.W. was expelled from Suwannee County public schools in July 2021. The School Board has refused to provide Plaintiff with any educational services during this time.

5.     The School Board's failure to evaluate J.W. to determine if she is a child with a disability and failure to provide appropriate special education services has resulted in and continues to result in a denial of a free appropriate public education (FAPE) under the IDEA for which Plaintiff seeks compensatory education.

6.     Plaintiff further seeks to be treated as a child not yet eligible for special education and related services and be returned to educational placement pursuant to 20 U.S.C. § 1415(k)(5).

7.     Plaintiff prevailed in the administrative proceedings as the ALJ ordered the School Board to evaluate J.W. As the prevailing party, Plaintiff seeks attorneys' fees for the time spent in the administrative proceeding pursuant to 20 U.S.C. § 1415(i)(3)(B).

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 20 U.S.C. § 1415(i)(2)&(3), as this action is brought under Section 1983 and the IDEA.

9.    The venue of this action is proper in the United States District Court for the Middle District of Florida, 28 U.S.C. § 1391(b)(1) & (2), since all claims arose in this district.

## PARTIES

10.    J.W. is a 15-year-old girl with a suspected disability within the meaning of IDEA. She brings this action through her parent and next friend. K.W. is the mother of the plaintiff.

11.    The School Board of Suwannee County is the Florida public school district that is responsible for providing educational services to J.W. under the IDEA. It is a local educational agency within the meaning of the IDEA, 20 U.S.C. § 1401(19).

## GENERAL ALLEGATIONS

*Statutory Scheme*

12.    The IDEA was enacted to ensure that all children with disabilities receive a free and appropriate public education "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d).

13.    Evaluations of children with disabilities are vital to determining appropriate educational programs. Among other requirements, school districts must provide assessment tools and strategies that afford relevant information to directly assist persons in determining the educational needs of the child. 0 U.S.C. § 1414(b)(3)(c). If a parent disagrees with an evaluation provided by the school district,

an Independent Educational Evaluation by a qualified examiner, not employed by the school district, may be requested. 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502.

14.    Educational programs for children with disabilities are designed and implemented through an Individualized Education Program (IEP) that contains, *inter alia*, statements of the following: the child's present level of educational performances; annual goals and short term objectives; the specific educational services to be provided to the child; and the extent to which the child will be educated in the regular education. 20 U.S.C. § 1414(d).

15.    Known as "Child Find," school districts have a continuing obligation under the IDEA to ensure that all children who are in need of special education and related services are identified, located and evaluated. 20 U.S.C. §1412(a)(3). This includes all children who are suspected of having a disability even though they are "advancing from grade to grade." 34 CFR § 300.111(c).

16.    In compliance with the Child Find mandate, Florida rules set forth the school district's responsibilities regarding students suspected of having a disability. A school district is to "develop and implement a multi-tiered system of support which integrates a continuum of academic and behavioral interventions for students who need additional support to succeed in the general education environment." This process, formerly known as Response to Intervention, is now referred to as Multi-tiered System of Support. Fla. Admin. Code R. 6A-6.0331.

17.    Response To Intervention/Multi-Tiered System of Support may not be used to delay appropriate evaluation of a student suspected of having a disability. Fla. Admin. Rule 6A-6.0331(1)(f).

18.    The Florida rules set out detailed requirements for Response To Intervention/Multi-Tiered System of Supports, including a "data-based problem solving process," parental involvement and sharing of data "used to identify the problem and monitor student progress," and any modifications or future actions to address the student's learning and/or behavioral needs. The intervention selected must be evidence-based, developed through a data-based problem solving process, implemented "for a period of time sufficient to determine effectiveness" and "with a level of intensity that matches the student's needs." Fla. Admin. Rule 6A-6.0331(1).

19.    The intensity levels for Response To Intervention/Multi-Tiered System of Supports are described as Tiers 1, 2 and 3. Tier 1 is the instructional methodology designed for all students in the general curriculum. Tier 2 consists of supplemental instruction and interventions that are provided in addition to and in alignment with effective core instruction and behavioral supports to groups of targeted students. Tier 3 is intensive instructional or behavioral interventions provided with the goal of increasing an individual student's rate of progress.

20.    A child "who has not yet been determined to be eligible for special education and related services" and "who has engaged in behavior that violates a code of student contact" is entitled to the procedural safeguards available under the IDEA

if the local educational agency had knowledge of the child's disability "before the behavior that precipitated the disciplinary action" occurred. 20 U.S.C. § 1415(k)(5)(A).

21.    When a request is made for evaluation of a child who is subject to disciplinary measures for a violation of the code of student conduct, the evaluation must be conducted in an expedited manner. If the child is determined to be a child with a disability, the local educational agency is required to provide special education and related services to that child. 20 U.S.C. § 1415(k)(5)(d).

22.    A school district may not change the educational placement of a child with a disability who violates a code of student conduct for more than ten days unless the behavior is determined not to be a manifestation of the child's disability under the IDEA. 20 U.S.C. § 1415(k)(1)(B)-(C).

23.    If "the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability…, the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner and for the same duration in which the procedures would be applied to children without disabilities." Under these circumstances, a school district is still required to provide the student with educational services designed to achieve a free and appropriate public education but may do so in an interim alternative educational setting. 20 U.S.C. § 1415(k)(1)(C)-(D).

24.    Whenever there is a disagreement between the parents and the school district regarding, *inter alia,* the educational placement of the child, or the provision of a free and appropriate public education either party may present a complaint to be

heard in an impartial administrative proceeding known as a "due process hearing," conducted by the state education agency. 20 U.S.C. §§ 1415(b)(6) & (f)(1).

25. In Florida, these hearings are held by DOAH. The decision of the ALJ is final. § 1003.57(1)(c), Fla. Stat. (2021).

26. The IDEA provides that parties aggrieved by the decision in the administrative proceedings have the right to bring a civil action, and that the court shall receive the administrative record, hear additional evidence at the request of a party, and base its decision on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C).

27. During the pendency of any proceedings conducted under the IDEA, unless otherwise agreed, "the child shall remain in the then-current educational placement of the child until all such proceedings have been completed." 20 U.S.C. § 1415(j). This is called "stay-put."

### DOAH Proceedings

28. The ALJ issued a final order on September 24, 2021, ruling that the School Board "breached its duty to evaluate and identify [J.W.] to determine if [s]he is a student with a disability in need of special education and related services." (Ex. 1, at 11.)

29. J.W. is a child with a disability. She is diagnosed with ADHD, generalized anxiety disorder, and major depressive disorder. A recent private evaluation reveals that Plaintiff suffers from a reading disorder, a disorder of expression, and a phonological disorder.

30.     Prior to March 2020, J.W. was a student attending Lafayette County schools.  J.W. filed a due process complaint alleging a violation of Child Find against Lafayette County School Board ("Lafayette") on September 11, 2020 (DOAH Case No. 20-4072E). On May 10, 2021, the ALJ in that case issued an order finding that Lafayette's duty to evaluate under the IDEA was triggered on February 10, 2020, when the district became aware that J.W. had been involuntarily examined under the Baker Act, was under the care of a physician, and had been diagnosed with ADHD, depression, and anxiety. However, because school districts are given a "reasonable time" to identify, locate, and evaluate children with disabilities, and J.W. was withdrawn from school within 30 days of Lafayette obtaining this information, the ALJ in that case did not find that Lafayette had breached its Child Find duty.

31.     The ALJ's factual findings in the Lafayette DOAH Case No. 20-4072E included the following:

        a.   During the 2018-2019 school year, Lafayette was providing J.W. with Tier 1 and Tier 2 MTSS interventions. J.W. also had seven disciplinary referrals during this school year.

        b.   During the 2019-2020 school year, J.W. made some progress in math and reading. However, in October 2019, Lafayette scheduled a conference due to J.W. receiving "excessive disciplinary referrals over a short period of time.

        c.   J.W.'s behavior improved for a time after this meeting, but following winter break, J.W.'s "behavioral incidents began to rise."

d. J.W. was involuntarily examined under the Baker Act in November 2019 and February 2020. After the February examination, she was admitted to a hospital psychiatric unit and "stabilized with medication management, therapeutic group and unit activities."

e. When J.W. returned to school after her February hospitalization, Lafayette drafted a Behavioral Intervention Plan for J.W. This Plan identified problem behaviors, services to be provided by staff and counselors, accommodations to assist J.W. in displaying positive behavior, and interventions to be utilized. The Plan also documented how progress would be measured and the positive and negative consequences for behavior.

f. J.W. received two more disciplinary referrals, and then her guardian withdrew her from the Lafayette school district on March 13, 2020.

32. In the March 10, 2021, hearing against the Suwannee County School Board, the ALJ took judicial notice of the factual findings from the Lafayette DOAH Case No. 20-4072E.

33. J.W. was enrolled in the Suwannee County School District on March 12, 2020. Based on prior disciplinary referrals from her school in Lafayette County, J.W. was enrolled in an alternative school under a "Completion Contract," by which she could earn her way to enrollment in a traditional high school. (Ex. 2, at 3-4.)

34. J.W. was found eligible for a 504 plan just prior to the 2020-2021 school year. On August, 19, 2020, the Section 504 Committee, after reviewing and considering "family input, grade reports, standardized tests and other tests,

teacher/administrator input, medical evaluations/diagnoses, and disciplinary records and referrals[,]" determined that J.W. had mental impairments of ADHD, depressive disorder, and anxiety. The 504 Committee "further concluded that the impairments substantially limit a major life activity and that Petitioner needed Section 504 services in order for [her] educational needs to be met as adequately as those of non-disabled peers." (Ex. 2, at 4.)

35.    On this same date, a Section 504 plan was created for J.W., documenting her needs as "work on appropriate responses to others" and "frequent breaks as needed" and her accommodations as "respond appropriately to adult on camera (and peers)" and "work as much as possible allowing opportunity for breaks when feeling anxious." The plan also provided that "[a]s [J.W.] transitions back to a brick and mortar setting from hybrid, we will discuss the need for further behavior contract or goals to be implemented." (*Id.*)

36.    J.W. completed the alternative school on October 28, 2020, and moved to a traditional high school, where she began to exhibit behavioral difficulties, including defiant behavior and inability to follow the basic rules of class. A meeting was held on January 12, 2021, to review J.W.'s Section 504 Plan. (Ex. 2, at 5.)

37.    At the January 12th meeting, J.W.'s 504 Plan was revised to document the following:

> [J.W.] has a diagnosis of depression and she is currently receiving counseling through Meridian. [J.W.] has difficulty trusting adults. [She] gets depressed very easily. [She] does not like to be called out in front of her peers. [She] needs positivity and positive attention. [She] is on new medication and other medications have been increased.

38.    The team also added the following accommodations: "preferential seating; flexible setting and scheduling; extra time with classwork, homework, and tests; reduce distractions; breaks as needed; repeat, clarify, and check for understanding of directions; verbal encouragement; and to allow [J.W.] to come to guidance or front office for a time out period when stressed, as needed." (Ex. 1, at 5-6.) The School Board never evaluated J.W. for an IEP.

39.    On January 26, 2021, Plaintiff engaged with another student, resulting in a physical fight. The school principal was struck by J.W. while attempting to remove her from the altercation.  The principal then recommended Plaintiff for expulsion based on a Level III violation of the student code of conduct. (Ex. 2, at 7.)

40.    On February 4, 2021, the School Board held a Section 504 Manifestation Determination Review "to determine whether, in relation to the behavior subject to disciplinary action (the January 26, 2021, incident), the behavior was caused by or had a direct or substantial relationship to [J.W.'s] disability or the direct result of a failure to implement the Section 504 Plan. The school-based members of the MDT ultimately concluded the behavior did not fall into either of the two categories." (*Id.*)

41.    Plaintiff filed an Expedited Request for a Due Process Hearing, challenging the School Board's failure to offer J.W. a free and appropriate public education and challenging the determination that J.W's conduct was not a manifestation of her disability under her 504 Plan. The Due Process proceedings were bifurcated. On April 23, 2021, an ALJ determined that Plaintiff's conduct was not a

manifestation of her disability under her 504 Plan nor was it the direct result of the School Board's failure to implement J.W.'s 504 Plan. (Ex. 2, at 19.)

42.    On April 7, 2021, the School Board held an expulsion hearing at which a Hearing Officer recommended that the School Board expel J.W. for the remainder of the 2021 school year and all of the 2021-2022. The School Board issued a final order of expulsion on July 27, 2021.

43.    J.W.'s last day in school was January 28. The School Board sent home work for J.W. to complete for the remainder of the 2020-2021 school year. Since the final order of expulsion was issued on July 27, J.W. has not received any educational services from Suwannee County.

44.    On April 29, 2021, J.W.'s counsel sent the School Board a request for evaluation. The School Board did not schedule any testing in response to this request.

45.    A second hearing was held before the ALJ on July 27, 2021, on the issue of whether the School Board failed to properly identify and evaluate J.W. to determine whether she was eligible for Exceptional Student Education services under the IDEA; and, if so, to what remedy was Plaintiff entitled. (Ex. 1, at 1.)

46.    At the hearing, J.W. presented the testimony of Edward C. Taylor, Ph.D.

47.    Dr. Taylor first examined J.W. on or about July 19 and 20, 2021. He reviewed records, interviewed J.W. and her guardian, and performed a comprehensive psychoeducational evaluation. (Ex. 1, at 4.)

48.    Dr. Taylor's overall impression was that J.W. "possesses a reading disorder, a disorder of expression, a phonological disorder, as well the previously

identified Attention-Deficit/Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder, and Major Depressive Disorder." (*Id.*)

49.    Dr. Taylor provided recommendations to address J.W.'s areas of deficit.

50.    To address the reading deficits, Dr. Taylor recommended direct intervention in the form of a multi-sensory method "such as Orton-Gillingham to address decoding, encoding and sight word reading."

51.    To address fluency, Dr. Taylor recommended a program such as Great Leaps® or Read Naturally®. He also recommended audio books, text to speech and speech to text apps to enable J.W. to access grade-level material.

52.    To address written expression, Dr. Taylor recommended a mixture of work-arounds with technology such as idea mapping software and training in notetaking, story boarding, and the writing process.

53.    To address behavior, Dr. Taylor recommended a relationship-based behavior management plan rather than a reward and punishment plan.

54.    J.W. argued in her Proposed Final Order submitted to the ALJ on September 1, 2021, that she was entitled to compensatory education services comprised of Dr. Taylor's recommendations.

55.    The ALJ found that, no later than August 11, 2020, the School Board was in possession of sufficient information of J.W.'s mental health diagnoses and significant behavior/disciplinary history "to reasonably indicate . . . that [J.W.] may be a student with a disability who needs special education and related services." (Ex. 1, at __.) The ALJ ordered the School Board to "communicate with Petitioner's legal

guardian and convene a meeting as soon as practicable to seek consent for conducting an initial evaluation" of J.W. (*Id.* at __.)

56.     The School Board has not yet begun an initial evaluation of J.W. or even held a meeting to seek consent to conduct the evaluation.

### *Child Find & Compensatory Education*

57.     A Child Find violation is a procedural violation of the IDEA.

58.     When a procedural violation of the IDEA causes a child's educational program to be substantively deficient, compensatory educational services may be necessary to place the child in the same place she would have been absent a violation of the act.

59.     The School Board's failure to identify, locate, and evaluate J.W. resulted in a loss of educational opportunity.

60.     The School Board has not provided J.W. with an IEP or special education services to address her behavioral health diagnoses, reading disorder, disorder of expression, and phonological disorder.

61.     As a result of the School Board's Child Find violation, J.W. suffers from deficits in reading, fluency, written expression, and behavior.

62.     J.W. sought compensatory education in the administrative proceeding, but the ALJ made no finding or ruling on an award of compensatory education.

63.     The School Board has refused to provide J.W. with compensatory education services.

64.     The School Board has not provided **any** educational services since the end of the 2020-2021 school year.

*J.W.'s Expulsion*

65.     J.W. was expelled from Suwannee County schools on July 27, 2021, based on an incident that occurred on January 26, 2021.

66.     J.W. became entitled to procedural protections of the IDEA in disciplinary proceedings once the School Board had knowledge of her disability, at the latest, on August 11, 2020.

67.     As the infraction that led to J.W.'s expulsion was determined not to be a manifestation of her disability, she may be subject to discipline in the same manner and for the same duration in which the procedures would be applied to children without disabilities; however, the School Board must still provide her with a free and appropriate public education.

68.     The School Board may provide J.W. with educational services in an interim alternative educational setting.

69.     J.W. is also entitled to the procedural safeguard guaranteed to students with disabilities to remain in the then-current educational placement while all proceedings under the IDEA are pending. 20 U.S.C. § 1415(j).

70.     J.W.'s then-current educational placement is the alternative school she was attending at the time the School Board was deemed to have knowledge of her disability.

71.     The School Board has not permitted J.W. to return to her then-current educational placement since the ALJ's order was issued on September 24, 2021, nor has she been offered another interim alternative educational setting.

72.     The School Board has refused to provide J.W. with any educational services since July 27, 2021.

### Attorney's Fees

73.     J.W. obtained a judicial determination on the merits in the administrative due process hearing that the School Board violated the "Child Find" duty of the IDEA. As relief, the ALJ ordered that the Board obtain consent to conduct an initial evaluation.

74.     J.W. is a prevailing party entitled to reasonable attorneys' fees consistent with 20 U.S.C. § 1415(i)(3).

75.     ALJs do not have the authority to award attorneys' fees to prevailing parties in administrative due process proceedings. The IDEA confers authority on District Courts to award attorneys' fees as part of costs to parents who prevail in administrative due process hearings. 20 U.S.C. § 1415(i)(3)(A).

76.     J.W.'s counsel spent 82 billable hours in the administrative proceeding.

77.     J.W.'s counsel works at the non-profit law firm Three Rivers Legal Services and does not charge clients for her services. J.W.'s counsel's hourly rate is determined by the prevailing market rate for similar services by lawyers of reasonably comparable skills, experience and reputation in the Jacksonville Division of the Middle District of Florida.

78.     The prevailing market rate in the Jacksonville Division of the Middle District of Florida for J.W.'s counsel is $400.

79.     J.W.'s counsel was admitted to The Florida Bar in 2008 and has spent 13 years dedicated to representing children with disabilities to obtain access to a free and appropriate public education. In addition to a Juris Doctor degree, J.W.'s counsel has a PhD in Special Education and Rehabilitation Counseling, a Master's Degree in Education, and is a Certified Circuit Civil Mediator.  J.W.'s counsel has represented more than one thousand students with disabilities, including filing approximately 116 DOAH cases and taking 19 of those through hearing.

80.     The lodestar for fees for the administrative proceeding at 82 hours multiplied by $400 is $32,800.

81.     J.W.'s counsel sought fees from the School Board on October 13, 2021, prior to filing a complaint for attorneys' fees with this Court, but the School Board declined to pay the attorneys' fees.

FIRST CLAIM FOR RELIEF
ENFORCEMENT UNDER SECTION 1983

82.     Plaintiff hereby incorporates paragraphs 1-81 by reference.

83.     Section 1983 provides a procedural device for enforcing the rights, privileges, or immunities secured by the Constitution or federal law, such as the IDEA.

84.     Since ALJs have no authority to enforce their own orders under the IDEA, Section 1983 provides an avenue by which prevailing parties may obtain the relief awarded at an administrative hearing.

85.    Once a petitioner establishes her substantive rights under the IDEA through a favorable administrative order, she may seek to have those rights enforced via a Section 1983 claim.

86.    J.W. prevailed at the administrative hearing. The ALJ ordered, as a remedy, that the School Board initiate an initial evaluation of J.W. "as soon as practicable." Almost three months later, the School Board has not done so.

87.    By its failure to comply with the ALJ's Final Order, the School Board has deprived J.W. of rights, privilege, and immunities secured by the Constitution and laws of the United States.

88.    Specially, the School Board has deprived J.W. of the right to the relief ordered by the ALJ.

SECOND CLAIM FOR RELIEF
ENFORCEMENT UNDER IDEA

89.    Plaintiff hereby incorporates paragraphs 1-81 by reference.

90.    Plaintiff received a favorable administrative order pursuant to her federal statutory rights under the IDEA. The ALJ ordered, as a remedy, that the School Board initiate an initial evaluation of J.W. "as soon as practicable." Almost three months later, the School Board has not complied with the ALJ's Order.

91.    Plaintiff is a "party aggrieved" under 20 U.S.C. § 1415(i)(2)(A). Specifically, Plaintiff is aggrieved by the School Board's failure to comply with the hearing officer's order of relief.

92.    Unless the School Board is enjoined and required to comply with the ALJ's Order, J.W. will continue to suffer immediate and irreparable harm from the School Board's failure to comply with the order for testing.

THIRD CLAIM FOR RELIEF
INDIVIDUALS WITH DISABILITIES EDUCATION ACT

93.    Plaintiff hereby incorporates paragraphs 1-81 by reference.

94.    Defendant has violated the rights of J.W. as secured by the IDEA, 20 U.S.C. § 1400, et seq. by:

a.    Denying J.W. a free appropriate public education and an opportunity to receive a meaningful benefit from education, in violation of 20 U.S.C. § 1412(a)(1)(A). *See* 20 U.S.C. § 1401(9).

b.    Unreasonable delay in identifying and evaluating J.W. as being in need of special education and related services, as required under the Child Find provisions of 20 U.S.C. § 1412(a)(3), and resulting denial of educational opportunity for J.W.

c.    Failing to provide the specially designed instruction, related services, and supplementary aids and services required for J.W. to receive a free appropriate public education, in violation of 20 U.S.C. § 1412(a)(1)(A).

d.    Failing to provide J.W. with the procedural safeguards guaranteed to students with disabilities as a student not yet eligible for special education and related services under 20 U.S.C. § 1415(k)(5).

19

95.    District Courts have broad discretion to fashion whatever relief is appropriate to remedy a substantive violation of the IDEA. District Courts may award compensatory education, by which the Court orders extra educational services designed to compensate for a past deficient educational program.

96.    When a procedural violation of the IDEA causes a child's educational program to be substantively deficient, compensatory educational services may be necessary to place the child in the same place she would have been absent a violation of the act.

97.    As a result of the School Board's Child Find violation and failure to provide an appropriate education, J.W. suffers from deficits in reading, fluency, written expression, and behavior.

98.    J.W. is entitled to compensatory education to address the deficits caused by the School Board's Child Find violation.

99.    As a result of the School Board's refusal to place J.W. in an interim alternative educational setting or return her to her then-current educational placement, J.W. has been deprived of educational services since July 27, 2021.

100.   J.W. also is entitled to compensatory education to compensate for the School Board's failure to provide any educational services since that time.

FOURTH CLAIM FOR RELIEF
IDEA ATTORNEY'S FEES FOR ADMINISTRATIVE HEARING

101.   Plaintiff hereby incorporates paragraphs 1-81 by reference.

102.   The IDEA permits the recovery of attorneys' fees by the prevailing parent in any action or proceeding. 20 U.S.C. § 1415(i)(3)(B).

103.   In IDEA cases, a prevailing party is one that attains a remedy that both (a) alters the legal relationship between the school district and the child, and (b) fosters the purpose of the IDEA.

104.   A litigant does not need to succeed on every issue, nor obtain the same relief sought at outset of the administrative proceeding, to qualify as a "prevailing party" under the IDEA. Rather, the litigant need only succeed on any significant issue which achieves some of the benefit sought in bringing the claim.

105.   J.W. obtained a determination on the merits, resulting in a change in the parties' legal relationship and was awarded relief on the merits of her claim. J.W. thus succeeded on a significant issue and achieved the benefit sought, a remedy which fosters the purposes of the IDEA.

106.   J.W. is a prevailing party for purposes of a fee award.

107.   As prevailing party, she may be awarded reasonable attorneys' fees and expenses as part of the cost for time spent in the administrative due process proceeding. 20 U.S.C. § 1415(i)(3)(B)(i)(l).

108.   J.W., who was represented by counsel, is entitled to attorneys' fees for time spent in the administrative proceeding.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

1.    Order the School Board to provide compensatory education to J.W. for its Child Find Violation and failure to provide an appropriate educational program;

2.    Order the School Board to return J.W. to her then-current educational placement or to an interim alternative educational setting;

3.    Order the School Board to provide compensatory education to J.W. for failing to provide any educational program since July 27, 2021;

4.    Award Plaintiff her reasonable attorney's fees and expenses for the time in the administrative proceeding;

5.    Award Plaintiff her reasonable attorneys' fees and expenses for the time in this action.

6.    Award such other and further relief as the Court considers just and proper.

Dated: December 20, 2021.                    Respectfully Submitted,

*/s/ Chelsea Dunn*
**CHELSEA DUNN, ESQ.**
LEAD COUNSEL
Fla Bar No. 1013541
Chelsea.Dunn@southernlegal.org
Maryel.Duncan@southernlegal.org
**JODI SIEGEL, ESQ.**
Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**ABIGAIL ADKINS, ESQ.**
Fla Bar No. 1018416
Abigail.Adkins@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890

**BEVERLY BROWN, ESQ.**
Florida Bar No.: 51978
Bev.Brown@trls.org
**Three Rivers Legal Services, Inc.**
3225 University Blvd. S., Ste, 220
Jacksonville, Florida 32216
(904) 423-8967

**Attorneys for Plaintiff**